# Third District Court of Appeal

## State of Florida

Opinion filed March 20, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1481
Lower Tribunal No. 15-2609B
_____

**The State of Florida,**
Appellant,

vs.

**Jaime Herrera-Fernandez,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Michael A. Hanzman, Judge.

Ashley Moody, Attorney General, and Melissa Roca Shaw, Assistant Attorney General, for appellant.

Carlos J. Martinez, Public Defender, and Maria E. Lauredo, Chief Assistant Public Defender, and James Odell, Assistant Public Defender, for appellee.

Before EMAS, C.J., and SALTER, J., and LEBAN, Senior Judge.

PER CURIAM.

Affirmed.  See State v. Leggett, 792 So. 2d 646 (Fla. 3d DCA 2001); State

v. Aguilar, 775 So. 2d 994 (Fla. 3d DCA 2000).

EMAS, C.J., specially concurring.

> How many legs does a dog have if you call his tail a leg?
> Four. Saying that a tail is a leg doesn't make it a leg.
> - *Abraham Lincoln*

## INTRODUCTION

The State appeals from a judgment and sentence imposed after the defendant accepted the trial court's below-guidelines plea offer.[1] The State contends that the trial court did not have the authority to offer such a plea because the prosecutor's "invitation for a counteroffer" was not a below-guidelines plea offer. We have affirmed this judgment and sentence with a citation to State v. Leggett, 792 So. 2d 646 (Fla. 3d DCA 2001) and State v. Aguilar, 775 So. 2d 994 (Fla. 3d DCA 2000), recognizing the outcome is controlled by the well-established case law that plea agreements in criminal cases are generally governed by principles of contract law. See Churchill v. State, 219 So. 3d 14 (Fla. 2017); Gonzalez v. State, 789 So. 2d 1091 (Fla. 3d DCA 2001); State v. Frazier, 697 So. 2d 944 (Fla. 3d DCA 1997); Garcia v. State, 722 So. 2d 905, 907 (Fla. 3d DCA 1998) (holding: "A plea

---

[1] I use the terms "sentencing guidelines" and "below-guidelines" offer for ease of reference, recognizing that because this case arose in 2015, the technically proper reference is to the "criminal punishment code" and "below criminal punishment code scoresheet" offer. See Fla. R. Crim. P. 3.704 (creating "The Criminal Punishment Code" for offenses occurring on or after October 1, 1998 and replacing the Sentencing Guidelines provisions of rules 3.701-3.703).

agreement is a contract and the rules of contract law are applicable to plea agreements").

And while that general legal proposition is unremarkable, the context in which this particular plea offer arose is remarkable. The actions of the prosecutor suggest an ill-fated attempt to prevent the trial judge from becoming involved in plea negotiations. There is a correct method and an incorrect method for accomplishing such an objective. I write to address problems that may arise when the incorrect method is followed, in the hopes such method gains neither momentum nor popularity.

## FACTUAL BACKGROUND AND ANALYSIS

The relevant facts of this case are straightforward: Herrera-Fernandez and two co-defendants were charged with trafficking in cocaine. Based on the amount of cocaine alleged to be involved, the three defendants each faced a mandatory minimum sentence of fifteen years in prison. See § 893.135(b)1.c., Fla. Stat. (2015). Independently, under the sentencing guidelines scoresheet, Herrera-Fernandez faced a minimum sentence of 124.5 months in prison.

The two co-defendants accepted plea offers in which the State waived the 15-year mandatory minimum sentence. One co-defendant received a six-year sentence; a second co-defendant received a 364-day county jail sentence.

About a year before trial, the prosecutor extended to Herrera-Fernandez a plea offer of sixty months in prison—an offer that waived the 15-year mandatory minimum and was below the minimum 124.5-months at the bottom of the guidelines. Herrera-Fernandez rejected this plea offer, but later advised the trial court he was willing to plead guilty if the court offered a more favorable sentence than that offered by the State. By this point, however, the prosecutor had already withdrawn its sixty-month offer, and the trial court correctly advised Herrera-Fernandez that, as a result, the court did not have the authority to extend a below-guidelines offer[2] or an offer below the 15-year mandatory minimum. See State v. Kelly, 147 So. 3d 1061, 1063 (Fla. 3d DCA 2014) (explaining that only the State Attorney has the authority to waive a mandatory minimum sentence). See also State v. Malloy, 23 So. 3d 1292 (Fla. 3d DCA 2010) (reversing where the State's plea offer was withdrawn before the trial court made its own below-guidelines offer); State v. Berry, 976 So. 2d 645 (Fla. 3d DCA 2008) (noting: "Had the State's downward departure offer remained open, then the trial court could have accepted the defendant's plea and imposed an even greater downward departure").

---

[2] This case does not involve the trial court's authority to unilaterally impose a downward departure sentence under sections 921.002 and 921.0026, Florida Statutes (2015). Under appropriate circumstances, and with written reasons provided, a trial court is authorized to impose a downward departure sentence even in the absence of a below-guidelines plea offer from the State. See Fla. R. Crim. P. 3.704(d)(27).

5

The case then proceeded to trial, and a jury was selected. Immediately before trial was to commence, the trial court determined that the State had committed a discovery violation and excluded certain evidence significant to the State's case.

Before the trial court's ruling but after the <u>Richardson</u> hearing, the prosecutor announced she would "accept a defense counter[offer] of 75 months in state prison," but would not characterize this as a "state offer." Nevertheless, the prosecutor was aware, based on a previous case in front of this same judge, that this "invitation for a defense counteroffer" would be treated as a State plea offer. The trial judge even advised the prosecutor:

> [T]he State plays the semantic game because, in its view, it has not extended an offer, and as a result, the Court is not permitted to offer a below-code plea. The State is incorrect. By representing it will accept the defendant's counteroffer to plead to a particular sentence, the State is, as a matter of law extending a plea offer.

The trial court then extended an offer, which Herrera-Fernandez accepted, of eighteen months in state prison followed by three years of probation. Later, in its written order imposing sentence, the trial court expanded on its legal analysis:

> As the State was well aware, this Court had previously concluded that by 'agreeing to accept a counteroffer' for a specified sentence the State is—as a matter of law—extending an 'offer.'

> This Court previously wrote [in a case involving a similar issue]: to convey its below code plea 'offers' the State routinely employs the charade of advising defendants that it will 'accept' a below code 'counteroffer.' The State plays this semantic game because in its view

6

it has not extended an 'offer' and, as a result, the Court is not permitted to offer a below code plea. The State is incorrect.

By representing that it will 'accept' a defendant's counteroffer to plea to a particular sentence the State is—as a matter of law—extending a plea 'offer.' See Restatement (Second) of Contracts, Section 24 (Offer Defined: 'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it'); Garcia v. State, 722 So. 2d 905 (Fla. 3d DCA 1998) ('[a] plea agreement is a contract and the rules of contract law are applicable to plea agreements').

I agree with the trial court's legal conclusion. The prosecutor's "invitation" for a defense "counteroffer" (in the absence of any pending offer) which included specific terms (75 months' imprisonment) and indicated the prosecutor's willingness to accept that "counteroffer," was indeed an "offer" extended by the State.

Once the prosecutor made an offer below the bottom of the guidelines (and waived the mandatory minimum sentence), the trial court was authorized to extend its own offer even if it was more favorable to the defendant than the prosecutor's offer.  By extending its own below-guidelines offer, the State recognized the appropriateness of a sentence below the bottom of the guidelines, and therefore cannot object to the court's offer or the extent of the departure.  See Aguilar, 775 So. 2d at 996 (holding: "Where the state and the defendant agree that a departure from the sentencing guidelines is appropriate, the extent of the departure is within

7

the sound discretion of the trial judge") (citing <u>State v. Collins</u>, 482 So. 2d 388, 390 (Fla. 5th DCA 1985)).

The prosecutor's position in the trial court placed the State (and the Attorney General's Office) in a quandary here on appeal. This is best illustrated by comparing the unconventional "invited counteroffer" with the conventional 60-month offer extended a year before trial. As previously explained, the 60-month offer was extended by the prosecutor, rejected by the defendant, and then withdrawn by the prosecutor. The trial court properly acknowledged that the prosecutor's withdrawal of the 60-month offer prevented the court from offering its own below-guidelines offer or an offer that waived the mandatory minimum.

As for the unconventional 75-month offer on the day of trial, the prosecutor argued to the trial court that this was not an offer at all, but merely a willingness to entertain a defense counteroffer (even though there was no offer outstanding). The prosecutor never withdrew the "invited counteroffer," nor could she logically have done so without conceding that it was, in reality, an offer rather than an "invited counteroffer." Given the prosecutor's position below, it is a daunting challenge on appeal for the State to contend that the prosecutor withdrew the offer and, by doing so, precluded the trial court from making its own below-guidelines offer. <u>See, e.g.</u>, <u>Malloy</u>, 23 So. 3d at 1292-93 (reversing a downward departure sentence imposed pursuant to a plea offered by the trial court where the trial court made its

8

offer after the State had "clearly and effectively withdrawn" its below-guidelines offer).

**CONCLUSION**

In the instant case, the prosecutor "invited" the defense to make a "counteroffer" of 75 months in prison (in the absence of any pending offer), and agreed that the State would "accept" such a "counteroffer" if made by the defendant. This was, plainly and simply, a State offer, regardless of the prosecutor's characterization of it as an "invited counteroffer." It was no more a counteroffer than a dog's tail is a fifth leg. Because the trial court properly determined that the "invited counteroffer" was really a below-guidelines plea offer that also waived the mandatory minimum sentence, and because that plea offer was not withdrawn by the State, the trial court was within its authority to extend its own plea offer to the defendant.